**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DARYL DEVON LESLEY,

                Petitioner,                Case Number: 2:06-CV-14773

v.                                                      HONORABLE PAUL D. BORMAN

JAN E. TROMBLEY,

                Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND (2) DENYING CERTIFICATE OF APPEALABILITY**

Petitioner Daryl Devon Lesley has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, challenges his convictions for armed robbery and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

**I.**

Petitioner's convictions arise from an armed robbery that occurred in Battle Creek, Michigan on January 9, 2003, at the apartment of Kevin Adams and Christina Gonzalez.

Adams testified that he went to bed on the evening of January 8, 2003. Gonzalez woke him some time later and told him they were being robbed. He testified that a man he identified as Petitioner was standing over him pointing a gun at him. Petitioner asked him where the money and guns were. Adams threw his pants, which contained his wallet, child-support checks, and money rolled up with a rubber band around it, at Petitioner. Petitioner then left the apartment and Adams made a police report.

Gonzalez testified that, during the early morning hours of January 9, 2003, she went to the kitchen to get a drink when she heard a knock at the door. When she opened the door, a person she identified as Petitioner rushed in and held a gun to her head. Petitioner led her into the bedroom, where she awakened Adams. Petitioner then pointed a gun at Adams. Adams gave Petitioner a pair of pants.

Police Officer Charles Pelfrey testified that he responded to the robbery call. After interviewing Adams and Gonzalez and receiving information from a confidential informant, Pelfrey proceeded to another residence where he found Larry Carter, Crystal Letch, and Petitioner. Petitioner was searched and money wrapped in a rubber band was found in his pocket. Carter was searched and Gonzalez's child support checks were found in his pockets. The vehicle identified as having been used in the robbery was registered to Charles Jettner. Jettner testified that he had loaned his vehicle to Petitioner and Letch earlier that day. After they returned his car and left his apartment, Jettner noticed that his mattress was slightly askew. He looked under the mattress and found a gun. He testified that the gun was not his. He contacted police and turned over the weapon.

Petitioner did not testify in his own defense.

## II.

Following a jury trial in Calhoun County Circuit Court, Petitioner was convicted of armed robbery and possession of a firearm during the commission of a felony. On June 2, 2003, he was sentenced as a third habitual offender to twenty to forty years' imprisonment for the robbery conviction, to be served consecutively to two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I. Defendant-appellant's convictions should be reversed because the trial court abused its discretion and defense counsel was ineffective for permitting the jury to question the witness concerning information which had previously been excluded.
>
> II. Defendant-appellant's convictions should be reversed because the trial court erred in denying the requested missing witness instruction and erred in finding due diligence had been met.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Lesley*, No. 249417 (Mich. Ct. App. Dec. 2, 2004).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised before the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Lesley*, No. 127879 (Mich. Nov. 2, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims presented in state court.

## III.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

4

application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

## IV.

### A.

Petitioner argues that his rights under the Confrontation Clause were violated when the trial court allowed Police Officer Charles Pelfrey to testify regarding information given to him from a confidential informant and that the trial court erred in admitting this testimony because it had previously been ruled inadmissible. In addition, Petitioner argues that his attorney was ineffective in failing to object to the admission of this testimony.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." *Id.*, at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from

the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" *Id.* at 405, *quoting Turner v. State of Louisiana*, 379 U.S. 466, 472-73 (1965).

In *Crawford v. Washington*, 541U.S. 36, 68 (2004), the Supreme Court held that out-of-court statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity for cross-examination regardless of whether the trial court finds the statements to be reliable. While the Supreme Court declined to "spell out a comprehensive definition of 'testimonial,'" the Court held that, at a minimum, the term covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* A tip by a confidential informant to a police officer is considered testimonial in nature. *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). "The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 541 U.S. 36, 59, n.9 (2004). "Testimony that does not reveal any specific statement made by a confidential informant . . . and merely provides background information regarding the course of the investigation does not violated the Confrontation Clause." *United States v. Pugh*, No. 06-3521, 2008 WL 961564, * 5 (6th Cir. Apr. 9, 2008), *citing United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). *See also U.S. v. Powers*, 500 F.3d 500, 508 (6th Cir. 2007) ("[T]estimony provided merely by way of background, or to explain simply why the Government commenced an investigation, is not offered for the truth of the matter asserted and, therefore, does not violate a defendant's Sixth Amendment rights.") (internal quotation omitted).

The Michigan Court of Appeals held that Officer Pelfrey's testimony was properly

6

admitted because he "testified only that he received information about the suspects, their vehicle, and their possible whereabouts, which led him to another witness's apartment. . . . [Pelfrey] did not recount the informant's statements or testify that the informant reported seeing defendant leaving the scene." *Lesley*, slip op. at 1-2. In addition, the state court held that Officer Pelfrey's testimony did not violate an earlier evidentiary ruling because Officer Pelfrey did not recount specific statements made by the confidential informant. *Id.*

Officer Pelfrey's testimony regarding the confidential informant provided only general background information and an explanation as to why the investigation proceeded as it did. Therefore, Officer Pelfrey's testimony did not violate the Confrontation Clause or otherwise render his trial fundamentally unfair. Habeas relief is not warranted.

In addition, because Petitioner has not shown that this testimony was improperly admitted, he also has not shown that his attorney was ineffective in failing to object to its admission.

**B.**

Next, Petitioner claims that the trial court erred in denying his request for a jury instruction regarding missing witness Larry Carter. Petitioner argues that the prosecution did not exercise due diligence in attempting to locate Carter and that it is more likely than not that testimony from Carter would have been exculpatory.

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) *(quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally

7

condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle,* 502 U.S. at 72 (*quoting Cupp*, 414 U.S. at 147).

Under Michigan law, the missing witness instruction may be appropriate if the prosecutor fails to produce a witness he has endorsed for trial, Mich. Comp. Laws § 767.40a(3), unless the prosecutor exercised due diligence to produce the witness and the witness's production is excused on that basis. *People v. Perez*, 469 Mich. 415, 420 (2003), *People v. Wolford*, 189 Mich. App. 478, 484, 473 N.W.2d 767 (1991). In this case, the trial court determined that the prosecution exercised due diligence in attempting to locate the missing witness and that the missing witness instruction was, therefore, not necessary. The Michigan Court of Appeals held that the trial court's decision was not an abuse of discretion, reasoning, in pertinent part:

> The prosecutor is required to file a witness list naming all known persons to be called at trial and all res gestae witnesses known to the prosecutor or the police. MCL 767.40a(1). The prosecutor does not have an obligation to produce *res gestae* witnesses unless they are named as witnesses to be called at trial. The prosecutor need only provide the defendant with notice of known *res gestae* witnesses and provide reasonable assistance to locate those witnesses at the defendant's request. MCL 767.40a(5); *Burwick, supra* at 288-289. The prosecutor may add or delete a witness from the list "at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). "The inability of the prosecution to locate a witness listed on the prosecution's witness list after the exercise of due diligence constitutes good cause to strike the witness from the list." *People v Canales*, 243 Mich. App. 571, 577; 624 N.W.2d 439 (2000). Given the authority of the court to excuse the production of listed witnesses, the missing-witness instruction is not appropriate if the court excuses production of the witness after a finding of due diligence. *People v Snider*, 239 Mich. App. 393, 422-423; 608 N.W.2d 502 (2000). The instruction would, however, be appropriate where, for example, the prosecutor fails to provide reasonable assistance to the defense in locating a witness or fails to produce a listed witness who has not been properly excused. *Perez, supra* at 420.

8

> The record shows that the police attempted to locate Carter at his last known addresses. No one at those locations knew him and the mailman said he had not seen Carter for over a year. The prosecutor had information that Carter had ties to Chicago and that someone attempted to track him down, only to be stymied by the overwhelming number of Larry Carters in the Chicago phone directory. Defendant contends that the prosecutor could have done more, such as check Illinois driver's license records and seek assistance from other agencies in locating Carter. It is possible that if the Illinois and federal authorities had sufficient manpower and time to devote to a search for Carter, they might have located him. However, "due diligence requires that everything reasonable, not everything possible, be done." *People v Whetstone*, 119 Mich. App. 546, 552; 326 N.W.2d 552 (1982). It is possible that, if the prosecutor had Carter's full name and date of birth, a driver's license check might have been feasible. However, the test is whether the prosecutor "made good-faith efforts to procure the testimony, not whether more stringent efforts would have produced it." *People v Conner*, 182 Mich. App. 674, 681; 452 N.W.2d 877 (1990). Moreover, there is no evidence that the prosecutor had specific leads indicating that Carter was in Chicago; defendant indicated only that Carter was from there originally. Absent specific leads, the prosecutor need only contact known persons who might have information about Carter's whereabouts, *id.*, and there is no evidence that such persons existed, here or in Chicago. In light of the record presented, the trial court did not err in finding due diligence and thus did not abuse its discretion in allowing Carter's name to be stricken. Therefore, the court properly declined to give former CJI2d 5.12.

*Lesley*, slip op. at 2-3.

The trial court's decision not to give the requested instruction was held to be in accord with Michigan law. In addition, Petitioner has not shown that the failure to give this instruction rendered his trial fundamentally unfair. Accordingly, habeas relief will be denied on this claim.

## V.

The Court next addresses whether Petitioner's claims warrant the issuance of a certificate of appealability. Before Petitioner may appeal the Court's dispositive decision denying his petition, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. §

9

2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

"When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Miller-El v. Cockrell*, 537 U.S. 322, 336-37(2003). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDonnell*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. Accordingly, the Court holds that Petitioner is not entitled to a certificate of appealability.

## VI.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

        s/Paul D. Borman
        **PAUL D. BORMAN**
        **UNITED STATES DISTRICT JUDGE**

**Dated: August 8, 2008**

## CERTIFICATE OF SERVICE

**Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 8, 2008.**

**s/Denise Goodine**
**Case Manager**
